**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-cv-23169-ALTMAN**

**WILFREDO ALBERTO LEZAMA GARCIA**,

      *Petitioner*,

*v.*

**MIAMI FIELD OFFICE DIRECTOR**, *et al.*,

      *Respondents*.

_____/

## <u>ORDER</u>

The Petitioner seeks a writ of habeas corpus, requesting (among other things) that we stay his removal from the United States, declare his detention unlawful, and order his immediate release. After careful review, we **DENY in part** the petition and **GRANT** a request for a hearing.

### BACKGROUND

Our Petitioner—Wilfredo Alberto Lezama Garcia, "a native and citizen of Venezuela"—"entered the United States without inspection or parole on or about November 26, 2021." Response to Order to Show Cause (the "Response") [ECF No. 33] at 1. He "was initially encountered by U.S. Customs and Border Protection on November 26, 2021" and then "released from U.S. Immigration and Customs Enforcement ('ICE') custody on his own recognizance on December 15, 2021, following the issuance of a Notice to Appear" ("NTA"). *Id.* at 1–2. "On or about October 25, 2022, Petitioner was convicted in the United States District Court for the Western District of Oklahoma of Conspiracy to Commit Bank Theft, in violation of 18 U.S.C. § 371." *Id.* at 2. "As a result of this conviction, on November 4, 2022, ICE detained the Petitioner, canceled the NTA, and notified Petitioner that it was seeking to remove him from the United States pursuant to . . . 8 U.S.C. § 1228(b)." *Ibid.* "ICE issued a final administrative order of removal [to Venezuela] . . . dated November 4, 2022." Second

Amended Complaint (the "Petition") [ECF 27] ¶ 43; *see also* Resp. at 2 ("Petitioner was charged with removability as an aggravated felon under . . . 8 U.S.C. § 1227(a)(2)(A)(iii)."). "On November 7, 2022, Petitioner was released from ICE custody on an Order of Supervision" ("OSUP"). Officer Cuevas Declaration [ECF No. 16-10] at 2.

"On or about December 7, 2022, Petitioner was convicted of Driving Under the Influence." Resp. at 2. He was then "taken into ICE custody at the Baker County Jail," where he "was detained . . . from December 7, 2022, until May 30, 2023." Officer Cuevas Decl. at 2–3. "On May 12, 2023, [an] immigration judge granted him withholding of removal" to Venezuela, "under 8 U.S.C. § 1231(b)(3)," "based upon both past persecution and a well-founded fear of future persecution in Venezuela." Pet. ¶¶ 44–45. "On May 30, 2023, Petitioner was released from ICE custody on an Order of Supervision." Officer Cuevas Decl. at 3.

"On or about December 18, 2024, Petitioner was convicted of Driving Under the Influence in St. Lucie County, Florida." *Ibid.* In March 2025, the Petitioner "violated the terms of his probation" and resumed a "probationary sentence." Resp. at 2–3. On June 17, 2025, the Petitioner was arrested for another "probation violation." *Id.* at 3; *see also* Exhibit D [ECF No. 22-4] at 2 (listing criminal history). "On June 18, 2025, ERO Miami encountered Petitioner at the Saint Lucie County Jail in Fort Pierce, Florida." Resp. at 3. From "July 6, 2025, to July 16, 2025," the Petitioner "was detained at the Florida Soft-sided Facility South . . . in Ochopee, Florida." *Ibid.* "On July 16, 2025, Petitioner was transferred to Krome Service Processing Center ('Krome'), where he is currently detained." *Ibid.* That same day, "ICE served upon Petitioner a Notice of Revocation of Release advising him that he would remain in ICE custody pursuant to 8 C.F.R. § 241.4." *Ibid.*

The Petitioner first filed a petition for habeas corpus in July 2025. *See* Petition [ECF No. 1]. He then filed his First Amended Petition [ECF No. 19] in September 2025 and the operative petition

in January 2026. The Respondents filed their Response in February 2026. That same month, the Petitioner filed a Reply to Respondents' Response (the "Reply") [ECF No. 35].

## THE LAW

Section 2241 allows district courts to grant relief to petitioners who are held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). This jurisdiction extends to petitioners challenging their detention under our immigration laws. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## ANALYSIS

This Petition includes six counts. Count I alleges that the Petitioner's "re-detention and threatened deportation" violate 8 U.S.C. § 1231(b)(3)(A) and 8 C.F.R. § 208.16. Pet. ¶¶ 150, 154. Count II alleges that the "Respondents failed to follow the procedures set out in 8 C.F.R. § 241.4(l)(1) or § 241.13 when revoking his OSUP" and thus "did not follow their own regulations in violation of the *Accardi* doctrine." *Id.* ¶¶ 156–57; *see also id.* ¶ 156 ("ICE did not notify Mr. Lezama Garcia 'of the reasons for revocation,' 'upon revocation,' nor did he receive the 'informal interview promptly after his return to Service custody.'" (cleaned up)). Count III alleges that the "decision to re-detain and deport Mr. Lezama Garcia was arbitrary and capricious, in violation of the APA" and that the Respondents' "violation of their own implementing regulations and the manner in which they re-detained Mr. Lezama Garcia also violated the APA." *Id.* ¶ 168; *see also id.* ¶ 160 ("Under the APA, reviewing courts must also 'hold unlawful and set aside agency action' that is 'arbitrary, capricious, or otherwise not in accordance with law.' 5 U.S.C. § 706(2)(A)."). Count IV alleges that, "[b]y re-detaining and deporting Mr. Lezama Garcia despite the protection he has been granted under 8 U.S.C. § 1231(b)(3)(A), Respondents violate Mr. Lezama Garcia's due process rights." *Id.* ¶ 178; *see also id.* ¶¶ 172–73 ("This re-detention and deportation violate his Fifth Amendment right to procedural due process. ICE's boilerplate Notice of Revocation letter was not particularized to Mr. Lezama Garcia

3

and justified his revocation, in part, due to an interview that had not even taken place. Respondents further violate Mr. Lezama Garcia's procedural due process rights by redetaining him to deport him to a third country without due process[.]"). Count V alleges that the "re-detention of Mr. Lezama Garcia violates substantive due process because there is no legitimate purpose for his detention." *Id.* ¶ 180; *see also id.* ¶ 182 ("The re-detention of Mr. Lezama Garcia does not serve a 'legitimate nonpunitive objective,' as he has been granted withholding of removal. ICE has not identified a safe third country for removal or given him the required statutory and constitutional process to defend against deportation to any alleged third country. Nor has ICE shown there are travel documents or that a country has accepted him."). Finally, Count VI alleges that the Petitioner's detention runs "contrary" to 8 U.S.C. § 1231(a)(1)(A) because he "has now been in detention more than six months since his re-detention on July 5, 2025," and his "removal is not significantly likely." *Id.* ¶¶ 184, 188–89.

## I.   Jurisdiction

As a threshold matter, the Respondents challenge our jurisdiction over the Petition. We thus begin by determining whether Congress has deprived federal courts of the ability to review these claims. *See Hain Celestial Grp., Inc. v. Palmquist*, 607 U. S. ___, ___ (2026) (slip op., at 1) ("Federal courts are courts of limited jurisdiction and generally can resolve only the cases that Congress grants them power to hear."). We find that it has—at least in part.

Under 8 U.S.C. § 1252(g), "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." Because "§ 1252(g) does not cover the universe of deportation claims," however, "only claims that arise from one of the covered actions are excluded . . . by this provision." *Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1272 (11th Cir. 2021) (quotation marks omitted); *see also ibid.* ("It is not a

shorthand way of referring to all claims arising from deportation proceedings." (cleaned up)). The Supreme Court has thus cautioned against construing § 1252(g) "broadly" and has instead made clear that the provision bars only those claims that "directly relate" to commencing proceedings, adjudicating cases, and executing removal orders. *Ibid.* So, "[w]hen asking if a claim is barred by § 1252(g), courts must focus on the action being challenged." *Canal A Media Holding, LLC v. United States Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1257–58 (11th Cir. 2020).

The Respondents argue that § 1252(g) "plainly bars . . . precisely the relief Petitioner requests here—that this Court stay his removal from the United States or to any place outside the Southern District of Florida." Resp. at 5. They further contend that "this Court lacks jurisdiction to review ICE's decision to revoke Petitioner's OSUP and take him into custody pursuant to 8 U.S.C. § 1252(g), because those actions were taken for the purpose of executing the final order of removal pending against him." *Id.* at 6. But the Petitioner counters that he "does not challenge that ICE can effectuate a removal order," only "the manner in which ICE executes the removal order, and whether ICE complied with their own OSUP revocation procedures." Reply at 15 (quotation marks omitted); *see also id.* at 16 ("Mr. Lezama Garcia does not seek to enjoin the execution of his order. He challenges ICE's procedural defects in revoking his OSUP, actions outside § 1252(g).").

We agree with the Respondents, at least as to the Petitioner's request that we "[s]tay his removal from the United States" and "[s]tay his transfer to any place outside the Southern District of Florida." Pet. ¶ 183. Those requests plainly fall within the ambit of the jurisdiction-stripping provision, which precludes judicial review of "*any* cause or claim by or on behalf of any alien *arising from* the *decision or action* by the Attorney General to . . . execute removal orders." § 1252(g) (emphases added).

To be sure, we must read § 1252(g) "narrow[ly]." *Canal A*, 964 F.3d at 1257; *see also DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) ("We have previously rejected as implausible the Government's suggestion that § 1252(g) covers all claims arising from deportation proceedings or

imposes a general jurisdictional limitation." (quotation marks omitted)); *Kong v. United States*, 62 F.4th 608, 614 (1st Cir. 2023) ("[T]he phrase 'arising from' is not infinitely elastic" and so "does not reach claims that are independent of, or wholly collateral to, the removal process, or that bear only a remote or attenuated connection to the removal of an alien." (cleaned up)). But "that does not give us license to ignore the plain meaning of the text." *Highpoint Tower Tech. Inc. v. Comm'r of Internal Rev.*, 931 F.3d 1050, 1060 n.8 (11th Cir. 2019). And "Section 1252(g) is unambiguous": We cannot enjoin removal orders. *Gupta v. McGahey*, 709 F.3d 1062, 1065 (11th Cir. 2013).[1]

Courts throughout the country have reached this same conclusion. *See, e.g.*, *Sharif v. Ashcroft*, 280 F.3d 786, 787 (7th Cir. 2002) (Easterbrook, J.) ("A request for a stay of removal 'arises from' the Attorney General's decision . . . to execute a removal order."); *Troy as Next Friend Zhang v. Barr*, 822 F. App'x 38, 39 (2d Cir. 2020) ("A stay of removal is a request to delay the execution of a removal

---

[1] The word "any," in conjunction with the phrases "arising from" and "action or decision," casts a wide net. *See Babb v. Wilkie*, 589 U.S. 399, 405 n.2 (2020) ("We have repeatedly explained that the word 'any' has an expansive meaning." (quotation marks omitted)); Webster's Third New International Dictionary 97 (1993) (defining "any" as "one or some indiscriminately of whatever kind"); *Humphries v. Various Fed. USINS Emps.*, 164 F.3d 936, 943 (5th Cir. 1999) (finding that "claims that clearly are included within the definition of 'arising from'" are "those claims connected directly and immediately with a 'decision or action by the Attorney General to . . . execute removal orders'"); *Camarena*, 988 F.3d at 1272 (reading § 1252(g) as barring "those claims that *directly relate* to the three specific actions it lists" (cleaned up)); *Tazu v. Att'y Gen. United States*, 975 F.3d 292, 298 (3d Cir. 2020) (Bibas, J.) ("The verb 'execute' means '"to perform or complete."'" (quoting *Black's Law Dictionary* (11th ed. 2019)).

We note that the Supreme Court has given similar effect to a neighboring provision—8 U.S.C. § 1252(a)(2)(B)(i)—which bars review of "any judgment regarding the granting of relief." *Patel v. Garland*, 596 U.S. 328, 338 (2022) ("The provision does not restrict itself to certain kinds of decisions."); *see also Flores v. Bondi*, 152 F.4th 73, 83 (2d Cir. 2025) (Park, J., concurring in part and concurring in the judgment) ("[T]he denial of the continuance was a 'judgment regarding the granting of relief' because it related to—indeed clinched—the ultimate decision to remove Petitioner."). That's neither to suggest the two provisions contain identical language nor to discard the Supreme Court's warning against interpreting § 1252(g) with "uncritical literalism." *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018) (cleaned up). But it *is* to accept the modest proposition that a "request to restrain . . . removal from the United States is a direct challenge to the Executive Branch's decision to execute a removal order." *Siguencia-Romero v. Joyce*, 2025 WL 3090887, at *4 (S.D.N.Y. Nov. 5, 2025) (Cronan, J.).

order."); *Rauda v. Jennings*, 55 F.4th 773, 777 (9th Cir. 2022) ("[Petitioner] seeks to enjoin the government from removing him—or in other words, enjoin action by the Attorney General to . . . execute removal orders against [him]. Congress has explicitly precluded our review of this claim." (cleaned up)); *Imran v. Harper*, 2026 WL 93131, at *1 (5th Cir. Jan. 13, 2026) ("A request for stay of removal is a challenge to a removal order . . . . The district court lacked jurisdiction to grant such relief."); *see also Rranxburgaj v. Wolf*, 825 F. App'x 278, 282–83 (6th Cir. 2020) ("By challenging ICE's decision to deny his request for a stay of removal, Rranxburgaj is seeking to enjoin the Attorney General from executing a valid order of removal . . . . [The] challenge instead goes directly to ICE's decision to execute an order of removal."); *Morales v. Noem*, 2026 WL 444955, at *2 (S.D. Fla. Feb. 17, 2026) (Singhal, J.) ("As this Court would be powerless to enjoin a decision or action to execute an existing removal order, it also cannot prospectively enjoin same in anticipation of its future existence. Constrained by section 1252(g), this Court is powerless to grant the requested relief."); *Grigorian v. Bondi*, 2025 WL 2604573, at *3 (S.D. Fla. Sept. 9, 2025) (Ruiz, J.) ("Consequently, an alien who seeks a stay of a removal order or challenges the Attorney General's deportation authority runs headlong into § 1252(g) regardless of how the alien frames their claim because, at bottom, the action being challenged is the decision to execute a removal order." (quotation marks omitted)).

"Courts interpret statutes, no matter the context, based on the traditional tools of statutory construction, not individual policy preferences." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 403 (2024); *see also Harisiades v. Shaughnessy*, 342 U.S. 580, 588–89 (1952) ("[A]ny policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government."). As applied here, those tools make clear that we lack jurisdiction to stay the Petitioner's removal or transfer and to second-guess the Respondents' decision to revoke the OSUP. Just as we cannot *overread* § 1252(g), we also can't *underread* its text. "Otherwise, § 1252(g) would be a paper tiger." *E.F.L. v. Prim*, 986 F.3d

959, 965 (7th Cir. 2021). We therefore **DENY** the request to "[s]tay his transfer to any place outside the Southern District of Florida" and to "[st]ay his removal from the United States." Pet. ¶ 183.

## II.     The Merits

But that doesn't end the matter. While Section 1252(g) "bars courts from reviewing certain exercises of discretion by the attorney general, it does not proscribe substantive review of the underlying legal bases for those discretionary decisions and actions." *Madu v. U.S. Atty. Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006). We thus remain free to hear the Petitioner's claims concerning the length of his detention and the Respondents' adherence to its internal procedures.

### a.   The Length of Detention

Starting with the length of detention, the Petitioner argues that his "re-detention since July 6, 2025, is unlawful because he has a withholding of removal order as to Venezuela issued by an immigration judge, ICE has no evidence showing plans to remove him to any safe third country, and even assuming they do identify a safe third country, he is entitled to defend against any country identified." Reply at 3. The Petitioner thus says that "there is no significant likelihood of his removal in the reasonably foreseeable future." *Ibid.* The Respondents, in turn, acknowledge that the "Petitioner has been detained since July 6, 2025,"[2] but they counter that the "Petitioner has failed to carry his

---

[2] The Petitioner offers two ways to count his current detention. Under the first approach, the clock started on July 6, 2025. *See* Pet. ¶ 1 ("Today, he has been in the custody of Immigration and Customs Enforcement . . . for more than six months since his redetention on July 5, 2025."). Under the second, the clock began over three years ago, despite the intervals during which the Petitioner (by his own admission) *wasn't* in detention. *See* Reply at 3–4 ("Mr. Lezama Garcia has been detained 3 years and 2 months in aggregate and has been illegally re-detained for about seven months and three weeks. This Court can grant his petition under either reading of *Zadvydas*." (citations omitted)).

The Respondents accept the first approach. *See* Resp. at 7 ("To the extent that Petitioner argues that his prior detention should count toward the total time of detention for this *Zadvydas* analysis, courts have held that the six-month *Zadvydas* presumptively reasonable detention period restarts when a Petitioner is released for a lengthy period and then re-detained."). So do we. *See Flores-Reyes v. Assistant Field Off. Dir.*, 2026 WL 406708, at *2–3 (S.D. Fla. Feb. 13, 2026) (Altman, J.) (declining to aggregate multiple detentions "[g]iven the executive branch's immigration-related

burden to show that his removal is not reasonably foreseeable." Resp. at 7–8. To that end, the Respondents point to the October 9, 2025 Decision to Continue Detention (the "October Decision") [ECF No. 22-11], which "inform[ed]" the Petitioner that "ICE has determined to maintain your custody" and noted that "ICE is in receipt of or expects to receive the necessary travel documents to effectuate your removal, and removal is practicable, likely to occur in the reasonably foreseeable future, and in the public interest." *Id.* at 1; *see also ibid.* ("Removal Expected to be Effected within Reasonable Foreseeable Future . . . . Subject also poses a threat to public due to a DUI conviction and a conviction for Conspiracy to Defraud the U.S. government 18 USC 371.").

In reply, the Petitioner maintains that "ICE has provided no evidence to this Court that there is a plan for removal and only argues that Mr. Lezama Garcia has not carried his burden." Reply at 5. Indeed, on his telling, the Petitioner has offered "eight, specific reasons why [his] removal is not reasonably foreseeable," none of which (he believes) are rebutted by "one conclusory sentence . . . from October 9, 2025." *Ibid.*; *see also ibid.* ("Mr. Lezama Garcia has carried his burden to show removal is not reasonably foreseeable by demonstrating: 1) he has now been detained over 180 days since his OSUP was revoked with no deportation in sight; 2) he has been granted withholding of removal to the one country that could be expected to accept him; 3) no other safe country has agreed to accept him or issued travel documents; 4) no alternate country has even been identified by ICE; 5) ICE has had since December of 2022, and at the latest May 12, 2023, to find an alternative safe country; 6) ICE officers re-detained him on the incorrect assumption that they could deport him to Venezuela; 7) there are no changed circumstances to support a determination that there is a significant likelihood that Mr. Lezama Garcia may be removed in the reasonably foreseeable future; and 8) if and

---

expertise and statutory authority to effectuate removals" and the absence of evidence that "the government has engaged in . . . [an] evasive scheme").

9

when a proposed safe third country is identified, he is entitled to notice and an opportunity to defend himself against deportation to that third country." (quotation marks omitted)).

"After the entry of a final order of removal against a noncitizen, the Government generally must secure the noncitizen's removal during a 90-day removal period." *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022) (quoting 8 U.S.C. § 1231(a)(1)(A)). Once that "removal period expires, the Government 'may' detain only four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" *Id.* at 578–79 (quoting 8 U.S.C. § 1231(a)(6)). But "Section 1231(a)(6) does not expressly specify how long detention past the 90-day removal period may continue for those who fall within the four designated statutory categories." *Id.* at 579.

To avoid the "serious constitutional concerns" involved in "indefinite detention," the Supreme Court has "construe[d] the statute to contain an implicit 'reasonable time' limitation" of six months, "the application of which is subject to federal-court review." *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001). "This 6-month presumption, of course, does not mean that every alien not removed must be released after six months." *Id.* at 701. "To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Ibid.* But "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Ibid.*; *see also ibid.* ("[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' . . . would have to shrink."). In conducting this inquiry, courts "must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily

extensive INS efforts to enforce this complex statute, and the Nation's need to speak with one voice in immigration matters." *Id.* at 700 (quotation marks omitted).

In resolving *Zadvydas* claims, courts consider whether the government can present evidence that removal remains reasonably foreseeable. That evidence can include the government's "contact" with a foreign country, whether the country "is accepting individuals removed from the United States," whether "flights are regularly being scheduled" to the country, and/or whether the country "routinely issues travel documents." *Lambert v. Garland*, 2023 WL 2016841, at *4 (S.D. Fla. Feb. 15, 2023) (Altman, J.) (quotation marks omitted); *see, e.g.*, *Vandi v. Ripa*, 2022 WL 2709109, at *2 (S.D. Fla. June 3, 2022) (Ruiz, J.) ("[P]etitioner's removal was 'reasonably foreseeable' since the Jamaican government indicated that travel documents were 'forthcoming.'"); *Vaz v. Skinner*, 634 F. App'x 778, 782 (11th Cir. 2015) ("[A]ll potential receiving countries . . . refused to accept the alien or there was no repatriation treaty.").

What's more, "[c]ourts in this Circuit have consistently held that, when a habeas petitioner is responsible for thwarting his removal, he cannot show that there is no reasonable likelihood that he will not be removed in the reasonably foreseeable future[.]" *Lambert*, 2023 WL 2016841, at *3 (quotation marks omitted); *see also Oladokun v. U.S. Atty. Gen.*, 479 F. App'x 895, 897 (11th Cir. 2012) ("[N]on-cooperation is the only barrier to his removal."); *Linares v. DHS*, 598 F. App'x 885, 887 (11th Cir. 2015) ("[T]he government has attempted to repatriate him five times . . . and he admits that his obstructive actions, failure to cooperate, and frequent litigation are the only reasons he remains in the United States."); *Vaz*, 634 F. App'x at 782 ("Brazil has not refused to accept Petitioner. In fact, the Consulate has indicated that it cannot issue Petitioner a travel document unless he voluntarily signs for it." (citations omitted)); *Castaneda v. Perry*, 95 F.4th 750, 758 n.7 (4th Cir. 2024) (finding that the petitioner "has not shown that the delay in his withholding-only proceedings is directly attributable to anything other than ordinary litigation processes" (quotation marks omitted)); *see also Guo Xing Song v.*

*U.S. Atty. Gen.*, 516 F. App'x 894, 899 (11th Cir. 2013) ("The six-month period is tolled, however, if the alien acts to prevent his removal."); *Gozo v. Napolitano*, 309 F. App'x 344, 346 (11th Cir. 2009) ("Gozo interrupted the running of time under *Zadvydas* when he simultaneously challenged issues related to his removal order and his post-removal period detention." (cleaned up)).

No such evidence has been substantiated or ruled out here. The Petitioner believes that he "has shown his removal is not reasonably likely" and that the *Zadvydas* burden has "shift[ed] to ICE to provide actual evidence." Reply at 4. But that overstates the evidence. That the Petitioner "has now been detained over 180 days since his OSUP was revoked," Pet. ¶ 131, goes only to the *first* of the two *Zadvydas* steps—*i.e.*, the need to show that custody has exceeded six months. And the other arguments he marshals—that Venezuela was "the *one country* that could be expected to accept him," that "no other safe country has agreed to accept him or issued travel documents," that "no alternate country has even been identified by ICE," and that "there are no changed circumstances to support a determination that there is a significant likelihood that Mr. Lezama Garcia may be removed in the reasonably foreseeable future"—haven't yet been confirmed. *Ibid.* (emphasis added). As ever, "[s]peculation is insufficient to carry the burden of a habeas corpus petitioner[.]" *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985); *see also Lambert*, 2023 WL 2016841, at *4 (holding that "conclusory proclamations"—that "ICE currently has no plan or ability to execute [a] removal order," that the "status of [a] travel document is unknown," and that ICE "has not been able to execute a removal flight . . . since [the date of detention]"—cannot alone satisfy the second *Zadvydas* step). So, on the record before us, we cannot say that the Petitioner has established that there's no significant likelihood of removal in the reasonably foreseeable future.[3]

---

[3] The Petitioner's other three arguments fare no better. The Petitioner claims that "ICE has had since December of 2022, and at the latest May 12, 2023, to find an alternative safe country," that "ICE officers re-detained him on the incorrect assumption that they could deport him to Venezuela," and that, "if and when a proposed safe third country is identified, he is entitled to notice and an opportunity to defend himself against deportation to that third country." Pet. ¶ 131. As of now, our

To the extent that the *Zadvydas* burden has shifted, however, we *do* agree with the Petitioner that the Respondents must offer more than "conclusory statements" that removal remains reasonably foreseeable. Reply at 4. In responding to the Petition, the Respondents have neither affirmed nor denied that *no* country (outside of Venezuela) can accept the Petitioner or that *no* progress has been made toward the Petitioner's removal. Instead, the Respondents have until now relied exclusively on the October Decision, perhaps in the belief that the "Petitioner has failed to carry his burden to show that his removal is not reasonably foreseeable." Resp. at 8. Given that the October Decision was issued some four months ago, and that the Respondents haven't confirmed the existence of post-October developments, we cannot settle the dispute as the record stands today.

On February 27, 2026, the Petitioner filed a Motion for a Hearing [ECF No. 36]. Given everything we've said, we'll **GRANT** that request in the interest of clarifying the record. At that hearing, the parties will have the opportunity to present evidence concerning the likelihood of the Petitioner's removal.

### b. The Remaining Claims

That leaves the Petitioner's claims about the Respondents' alleged failure to comply with its internal rules. Given our decision to schedule a hearing, we'll decline (for now) to reach those claims in the event that the hearing impacts the relief requested here. *See* Pet. ¶ 183 (asking that we declare the Petitioner's detention "unlawful," grant "a Writ of Habeas Corpus ordering Respondents to immediately release him," and "[a]ward . . . reasonable costs and attorney's fees"). We do, however, **DENY** the request to order the Respondents to "grant . . . the opportunity to have a court hearing before an immigration judge on his fear of return" if "a third country of removal is identified." *Ibid.* That request is "not ripe for adjudication" because "it rests upon contingent future events that may

---

Petitioner hasn't established the truth of those propositions. But, even if he had, those arguments wouldn't undermine the likelihood of a reasonably foreseeable removal.

not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (quotation marks omitted); *see also Puga v. Assistant Field Off. Dir., Krome N. Serv. Processing Ctr.*, 2025 WL 2938369, at *6 (S.D. Fla. Oct. 15, 2025) (Altonaga, C.J.) (dismissing without prejudice "an unripe claim contingent on Petitioner not receiving a custody determination hearing").

### CONCLUSION

After careful review, therefore, we **ORDER and ADJUDGE** as follows:

1. The Second Amended Petition for Writ of Habeas Corpus [ECF No. 27] is **DENIED in part**.

2. The Motion for Hearing [ECF No. 36] is **GRANTED**. A forthcoming order will schedule a hearing.

**DONE AND ORDERED** in the Southern District of Florida on March 6, 2026.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record

Noticing INS Attorney
Email: usafls-immigration@usdoj.gov

14